





FILED
7/18/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

| | |
|---|---|
| **DIPESH SINGLA,**<br><br>    Plaintiff-Appellant,<br><br>  v.<br><br>**THE UNIVERSITY OF CHICAGO,**<br><br>    Defendant-Appellee. | On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br>Dist. Case No. 1:26-cv-06156<br>Other Related Case: 1:25-cv-08098<br>Dist Court Judge: Hon. Sunil R. Harjani<br><br>_____<br><br>**APPEAL NO**:<br>*(To be assigned by Clerk)*<br>Date Filed: 18 July 2026 |

## MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL, FOR APPOINTMENT OF COUNSEL, FOR WAIVER OF PACER FEES, AND OPENING BRIEF OF APPELLANT DIPESH SINGLA

_____

Appellant Dipesh Singla ("Appellant" or "Singla"), proceeding pro se, indigent, and residing outside the United States, respectfully submits this Motion for Leave to Proceed in Forma Pauperis on Appeal, Motion for Appointment of Counsel, and Opening Brief. Appellant has prepared this filing without the benefit of paid legal research platforms (LexisNexis or Westlaw), without full PACER access(despite multiple good faith requests), library, and without legal counsel. To the extent any citation, format, or procedural element is incorrect or incomplete, Appellant respectfully requests leave to amend or correct upon notice. In light of Appellant's pro se status, indigence, disability, and residence outside the United States, Appellant respectfully asks this Honorable Court to construe this filing liberally and in favor of ensuring meaningful access to justice, rather than imposing strict technical requirements that would defeat Appellant's ability to prosecute this good-faith appeal.

## MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL
## AND FOR APPOINTMENT OF COUNSEL

COMES NOW Appellant Dipesh Singla, proceeding pro se, and respectfully moves this Honorable Court in **GOOD FAITH,** pursuant to Federal Rule of Appellate Procedure 24(a)(1), for leave to proceed on appeal in forma pauperis ("IFP"), for appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1), and for a waiver of PACER electronic-filing and access fees. Plaintiff also incorporates these codes herein: Honest Services Fraud (18 U.S.C. § 1346), (18 U.S.C. § 201), 18 U.S.C. § 242, 28 U.S.C. §§ 351–364, 28 U.S.C. § 455, Federal Rule of Civil Procedure 60(b), and etcetra in the appeal.

In support of this Motion, Appellant states as follows:

### A. Appellant Is Indigent and Unable to Pay the Costs of Appeal

Appellant is unemployed and has had no take-home pay since March 2025. As the district court found in its July 15, 2026 Order, Appellant's only asset is approximately $1,538.04 in a bank account, with no other assets. Appellant lists his parents as dependents and carries various debts and recurring costs of living. The district court expressly concluded that "Singla's income puts him below the HHS poverty guideline for a three-person household" and that "Singla lacks the financial resources to pay the fees and costs associated with this action." Order at 1–2 (Harjani, J., July 15, 2026). That finding is hereby incorporated by reference and is dispositive of Appellant's inability to pay the $505.00 appellate filing fee and the costs of preparing and transmitting the record on appeal.

Appellant resides outside the United States (in India), is a person with a documented disability, and has no access to subscription-based legal research platforms such as LexisNexis or Westlaw. These circumstances compound Appellant's indigence and establish that this appeal cannot be prosecuted without IFP status, appointed counsel, and access to legal research resources.

### B. The Appeal Is Taken in Good Faith

Pursuant to Federal Rule of Appellate Procedure 24(a)(3) and 28 U.S.C. § 1915(a)(3), Appellant certifies that this appeal is taken in good faith. Appellant seeks review of the district court's July 15, 2026, Order dismissing his Complaint **with prejudice as frivolous under 28**

**U.S.C. § 1915(e)(2)(B)(i) without any hearing opportunity, or opportunity to rebut the order.** The Order rests on a complete **misapplication** of the duplicative-litigation doctrine articulated in Serlin v. Arthur Andersen & Co., 3 F.3d 221 (7th Cir. 1993), mischaracterizes, and speculate against Appellant's **good-faith protective filing** (To Toll EEOC Statue of Limitations) as an "abuse" of the judicial system, and imposes dismissal with prejudice as in fact a sanction without first affording Appellant an opportunity to be heard or to amend. Each of these errors presents non-frivolous, good-faith questions for appellate review.

## C. Appointment of Counsel Is Necessary

This case is extraordinarily complex. It involves multiple federal statutes (Title VII, Title IX, the Americans with Disabilities Act, the Rehabilitation Act, the Equal Pay Act, GINA, 42 U.S.C. § 1983, the First and Fourteenth Amendments), parallel state-law claims, multiple defendants (the University of Chicago, its officers, departments, agents, and two unions), and a constellation of contested factual allegations spanning approximately fifteen (15) jobs and several years of alleged retaliatory conduct. Appellant is a pro se litigant of limited means, residing abroad, with a documented disability, and without access to LexisNexis, Westlaw, or comparable research tools. The complexity of the legal and factual issues far exceeds the capacity of an unrepresented, indigent litigant to present adequately. Appointment of counsel under 28 U.S.C. § 1915(e)(1) is therefore essential to a fair disposition of this appeal.

## D. Waiver of PACER Fees and Research-Platform Access

Appellant additionally requests that this Court waive all PACER electronic-access fees for all courts in multi-district PACER access form, and otherwise all district and appellate courts, and direct that Appellant be granted no-cost access to LexisNexis and Westlaw (or equivalent e-library research platforms) to the extent permissible by law and within this Court's authority. Without such access, Appellant cannot meaningfully identify binding precedent, analyze legal authority, or prepare competent filings. The E-Government Act of 2002, 44 U.S.C. § 3516, authorizes the Judicial Conference to prescribe reasonable fees for access to electronic court records but also provides authority to grant exemptions to promote public access and avoid unreasonable burdens on indigent litigants.

## E. Affidavit of Indigency

Appellant Dipesh Singla, being duly sworn, deposes and says:

(1) I am the Appellant in the above-captioned matter;

(2) I am currently unemployed and have had no monthly take-home pay since March 2025;

(3) my only asset is approximately $1,538.04 in a bank account;

(4) I list my parents as dependents and have various debts and recurring costs of living;

(5) by reason of my poverty, I am unable to pay the costs of this appeal or to give security therefor;

(6) I believe I am entitled to the relief sought in the Opening Brief; and

(7) the statements contained in this Motion and the accompanying Opening Brief are true and correct to the best of my knowledge, information, and belief.

WHEREFORE, Appellant respectfully prays that this Honorable Court grant leave to proceed in forma pauperis on appeal, appoint pro bono counsel, waive PACER fees, and grant such other and further relief as the Court deems just and proper.

FILED IN GOOD FAITH

Dipesh Singla

July 16 2026

## OPENING BRIEF OF APPELLANT DIPESH SINGLA

### I. JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which grants the courts of appeals jurisdiction over final decisions of the district courts. The Order appealed from, entered July 15, 2026 by the Honorable Sunil R. Harjani, dismissed Appellant's Complaint in its entirety with prejudice and terminated the civil case. Singla v. Univ. of Chi., No. 1:26-cv-06156 (N.D. Ill. July 15, 2026), ECF No. 14. A dismissal with prejudice is a final, appealable order within the meaning of § 1291.

This appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A), which provides a thirty-day period from entry of the appealed order within which to file a notice of appeal in a civil case in which the United States is not a party. The Order was entered July 15, 2026. This Opening Brief is submitted concurrently with Appellant's Notice of Appeal, which is filed within thirty (30) days of entry of the Order.

### II. ISSUES PRESENTED FOR REVIEW

**Issue 1.** Whether the district court erred in dismissing Appellant's Complaint with prejudice as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), where the Complaint pleads concrete, non-delusional factual allegations and invokes recognized federal causes of action, and where dismissal on duplicativeness grounds is a doctrine of abstention—not a merits adjudication—that cannot support a frivolousness finding under Neitzke v. Williams, 490 U.S. 319, 325 (1989).

**Issue 2.** Whether the district court's conclusion that the present action is "duplicative" of Singla v. Univ. of Chi., No. 1:25-cv-08098 (N.D. Ill.), rests on sheer speculation rather than record evidence, where (a) the parties in the two actions are not identical, (b) the present action pleads two claims not yet at issue in 8098, and (c) the district court assumed—without any written confirmation from the 8098 court—that Appellant could incorporate his newly exhausted EEOC right-to-sue claims by amendment in 8098, when there's no evidence for plaintiff to consider when repeatedly notified court to order on the motion to incorporate EEOC right to sue in existing 08098 and court choose to not order

it in many months even after the statue of limitation expired, when no such rule says that filing a motion to amend and consider EEOC in existing lawsuit toll the statues of EEOC Right to Sue Letter.

**Issue 3.** Whether the district court's characterization of Appellant's conduct as "abus[ing] the court system" is legally unsupported, defamatory, and inconsistent with the controlling definition of "abuse," where Appellant (a) disclosed the existence of the 8098 action on the **first page** of his Complaint in good faith, (b) sought consolidation in **good faith to avoid duplication**, and (c) filed protectively only because the 8098 court had not clarified in months whether EEOC right-to-sue claims could be added by amendment while the statutory ninety-day filing window was running.

**Issue 4.** Whether the district court committed reversible error by punishing Appellant's good-faith transparency—specifically, his disclosure of the 8098 action—rather than crediting it, and by treating Appellant's protective filing as evidence of bad faith/abusive/frivolous etc.

**Issue 5.** Whether the district court abused its discretion in dismissing the Complaint with prejudice, without affording Appellant any opportunity to amend or to be heard, where pro se complaints must be liberally construed and where leave to amend should be freely given under Federal Rule of Civil Procedure 15(a).

**Issue 6.** Whether the cumulative pattern of disposition by federal district courts and administrative agencies in cases involving the University of Chicago—including the 8098 court's failure for over one year to rule on Appellant's IFP application and motion for appointment of counsel—warrants reassignment to a neutral panel on remand and supervisory attention by this Court.

**Issue 7.** Whether the Hon'ble Court, due to their repeated dismissals and no deterrence action against the University of Chicago, makes it a creature of the University of Chicago, including the local admin agencies like IHRC etc also took no action in any case out of 22 cases against UChicago, as Local admin agencies and courts are reluctant to take any significant action against the University of Chicago, despite it get sued over and over again.                    See                    Research:

https://1drv.ms/w/c/cb5a9ea1fc1bce73/IQB7Jo4cZB93QpF2UBXqpNBYAVREt7WlHv7wcqBy8HAUTJM?e=TDfnf3 (**OneDrive file**)

**Issue 8.** Whether the trial court abused its discretion and committed reversible error as a matter of law by classifying the litigant's action as "frivolous"—premised upon alleged "duplicativeness" and a multi-month delay proximately caused by the court's own failure to determine motions and taking more than a year to determine on IFP form status—when the strictly construed, controlling legal definition of frivolousness omits duplicativeness as a qualifying condition, thereby penalizing the litigant through the application of an erroneous and uncodified legal standard.

## III. STATEMENT OF THE CASE

### A. Procedural History

On July 16, 202**5,** Appellant Dipesh Singla filed a civil action in the United States District Court for the Northern District of Illinois, Eastern Division, captioned Singla v. University of Chicago et al., No. 1:25-cv-08098 ("the 8098 action", "8098", "08098"), before the Honorable Jeffrey I. Cummings, with Magistrate Judge Jeffrey T. Gilbert. The 8098 action alleges employment discrimination, retaliation, disability discrimination, failure to accommodate, hostile educational environment, due process violations, and equal protection violations arising out of Appellant's graduate studies and employment at the University of Chicago. The 8098 action named multiple defendants, including the University of Chicago, its officers and departments, the Graduate Student United at the University of Chicago, Teamsters Local 743, and Doe defendants.

From the outset of the 8098 action, Appellant applied to proceed in forma pauperis and moved for appointment of counsel. As of the date of this filing, more than one year after the 8098 action was commenced, the district court has not finally ruled on Appellant's IFP application or on his request for appointed counsel. On or about June 4, 2026, the 8098 court entered a minute order noting that it had denied Appellant's motion to recuse, and that it would "review the amended application and plaintiff's recent filings and issue further filings in due course," resetting the tracking status hearing to June 22, 2026. 8098, ECF No. 114. As of this writing, no ruling on the IFP application itself has been issued. Neither has the court clarified to

date in either of these Hon'ble NDIL cases whether EEOC RTS should be considered in any of the cases, and whether the case is timely filed. This case was timely filed and was dismissed by the district court judge without any consolidation or confirmation that EEOC RTS would be considered in this or other case. The Hon'ble court chose to sit completely silent in that regard, for what the lawsuit filing did become necessary to protect my right. That also court chooses to take into completely wrong direction by speculating and trying to fit the case into the definition of frivolity when it's clearly not, to the extent that the court claimed duplicative, it sits silent on union conduct as alleged in the 08098 lawsuit, and chose not to dismiss solely on duplicative grounds as that would have been allegedly insufficient, and hence stretching of definitions to fit the case in frivolity is the conduct of hon'ble court that I respectfully dissent.

On March 16, 2026, Appellant received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC RTS", "RTS"). Under controlling EEOC regulations, Appellant was required to file a civil action based on the EEOC RTS within ninety (90) days of its receipt—that is, on or before approximately June 14, 2026. The letter says "If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal**." The EEOC RTS, on its face, directs the recipient to file a civil lawsuit; it is silent as to whether the recipient may incorporate the right-to-sue claims into a pre-existing action by amendment.

Appellant filed a motion for leave to amend his complaint in the 8098 action on or about April 2026 (8098, ECF Nos. 93, 97) to incorporate the newly exhausted EEOC claims. The 8098 court did not clarify, in writing or otherwise, whether amendment would be deemed to satisfy the ninety-day EEOC filing requirement. With the ninety-day window running, Appellant—**abundantly cautious of losing his federal rights** especially under Title VII—filed a protective civil action on May 21, 2026 in the United States District Court for the Central District of Illinois, captioned Singla v. University of Chicago, No. 3:26-cv-03174 ("the CDIL action"). On the first page of the CDIL Complaint, Appellant expressly disclosed the existence of the 8098 action, the pending motion to recuse and transfer venue before Judge Cummings, and explained that the protective filing was intended to preserve his federal rights within the EEOC deadline. CDIL Compl. ¶¶ 2–3. While starting the case in May or June 2025 or so, it took plaintiff

probably more than a month to start the case (allegedly), due to new issues over and over again being raised by NDIL hon'ble court's staff in filings.

The CDIL action was thereafter transferred to the Northern District of Illinois and docketed as Singla v. University of Chicago, No. 1:26-cv-06156, before the Honorable Sunil R. Harjani ("the 6156 action"). On July 15, 2026, Judge Harjani entered an Order granting Appellant's IFP application but dismissing the Complaint with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). Order, 6156, ECF No. 14. This appeal follows.

**B. The July 15, 2026 Order**

The district court's Order rests entirely on the conclusion that the 6156 action is "frivolous because it is duplicative of another action pending in this district.". In reaching that conclusion, the district court reasoned that (a) the 8098 action "includes more defendants, and is still at the pleading stage," (b) "it serves judicial efficiency for that action to consider any new claims," (c) Appellant "can try to amend his complaint in the 8098 action to add these claims and obtain the same relief he seeks here," and (d) the protective filing "abuse[s] the court system and demonstrate[s] the frivolousness of [the] filing." The Order then dismissed the Complaint with prejudice and terminated the case.

The Order contains no analysis of whether the factual allegations in the Complaint are "the product of delusion or fantasy," and no analysis of whether any legal theory advanced is "indisputably meritless." The Order does not engage much with the EEOC deadline pressure that motivated the protective filing. The Order does not credit Appellant's express disclosure of the 8098 action on the first page of the Complaint. The Order does not address the parties' non-identity, union conduct, etc. The Order does not consider Appellant's good-faith request for consolidation so that a single case shall exist. The Order does not afford Appellant leave to amend. The Order does not conduct any weighing of the "significant latitude" standard recognized in Scholz v. United States, 18 F.4th 941, 951 (7th Cir. 2021), against the pro se liberal-construction standard of Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## IV. STATEMENT OF FACTS

**A. Appellant's Status at the University of Chicago**

Appellant Dipesh Singla was a graduate student and employee at the University of Chicago, a federally funded institution. Appellant is of Indian national origin, South Asian ethnicity, Punjabi caste-minority heritage, and a person with a documented disability. Appellant held approximately **fifteen (15)** jobs during his tenure at the University.

## B. The Underlying Discrimination and Retaliation

Appellant was assaulted by a University affiliate, Shrivatsa Thulasiram, who was a student and a full-time employee of the University of Chicago. When Appellant requested protective measures, those measures were denied. Compl. ¶¶ 24–26. Appellant was denied reasonable accommodation for his documented disability. Compl. ¶¶ 19, 21–23. In 2025, Appellant was terminated from his campus jobs in retaliation for his protected activities and complaints internally. Compl. ¶¶ 29–33. Appellant thereafter filed a written complaint alleging discrimination based on his Indian national origin, South Asian ethnicity, Punjabi caste minority heritage, and disability, and a formal union grievance. Compl. ¶¶ 20, 27–28.

## C. The Expulsion

The University stole Appellant's outstanding wages and retaliated against him right after filing a union grievance. Compl. ¶¶ 34–40. The University expelled Appellant right after filing a union grievance, discrimination and wrongful termination, and assault grievances, delayed and withheld his transcripts from other programs, notified a law school about expulsion, surveilled him at his residence, and made threatening communications. Compl. ¶ 41. Appellant seeks damages for the loss of his degree, employment, United States visa status, emotional and reputational harm, and future earning potential. Compl. ¶ 42.

## D. The Administrative Exhaustion and EEOC Right to Sue

Appellant received a Notice of Right to Sue from the EEOC dated March 16, 2026, satisfying all administrative prerequisites under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Rehabilitation Act of 1973. The ninety-day filing window under 42 U.S.C. § 2000e-5(f)(1) ran on or about June 14, 2026. Appellant timely filed both a motion for leave to amend in the 8098 action (to incorporate the EEOC-exhausted claims) and, in **abundance of caution**, a protective civil action in the Central District of Illinois on May 21, 2026, expressly disclosing the existence of the 8098 action on the first page of the

Complaint. Court in 08098 did not rule on the motion, making it necessary for me to file a new case, as clarification was not provided to me in writing signed by the judge and this matter was not as such discussed in EEOC RTS. Plaintiff waited for a significant time after the motion to file this suit to toll away statutes; if the court would have ruled already on the motion in favor of plaintiff, plaintiff would not have needed to file the new suit, which the court so claims is frivolous.

https://www.ohchr.org/en/instruments-mechanisms/instruments/declaration-basic-principles-justice-victims-crime-and-abuse

Victims should be treated with compassion and respect for their dignity. They are entitled to access to the mechanisms of justice and to prompt redress, as provided for by national legislation, for the harm that they have suffered.

I hereby claim that calling my claim frivolous when brought in good faith, the dist. court has chosen not to treat me with compassion, respect, and dignity when I am a victim of hate crime, violence, retaliation, discrimination, abuse, harassment, and most importantly, a grieving party of justice. And hence

"America is choosing not to treat its Dipesh Singla well. They all see me with eyes of hate and anger because I truly sought Education, and Research in US"


## E. The Pattern of Administrative Inaction Concerning the University of Chicago

Appellant has documented, in approximately 2,500 pages of research, what he submits is a persistent pattern of disposition by federal district courts and administrative agencies in matters involving the University of Chicago. By way of example only: the Illinois Human Rights Commission ("IHRC") has not, to Appellant's knowledge, taken meaningful action against the University of Chicago in about 22 complaints; and the National Labor Relations Board ("NLRB"), over a span of approximately twenty-six (26) years, has not taken significant action against the University of Chicago despite approximately three hundred and fifty (350) complaints filed against it (under the names "University of Chicago" and "The University of Chicago"). Appellant does not attribute these outcomes to any single decision-maker but submits

that the cumulative pattern bears on the question of whether Appellant has been afforded a fair forum in which to be heard.

"***I am not putting the court under trial; courts are doing that themselves***"

"Local agencies and in fact, some courts are unfortunately now appearing to be creatures of the University of Chicago from my research, I hope I shall be wrong."

Therefore, I want to mention what the Holy Bible says

Pro 22:8 Whoever sows injustice will reap calamity, and the rod of his fury will fail. (ESV, English Standard Version) (https://www.realbiblestudy.com/?p=4243)

## F. Conflict of Interest

Magistrate Judge Sunil R. Harjani nominated Professor Schmidt and his students for the pro bono award based on their efforts in the case. According to Judge Harjani, Professor Schmidt "showed great initiative in accepting the case and working with his students from the **Mandel Legal Aid Clinic at the University of Chicago** to represent client in the settlement conference. Professor Schmidt and his students earned the client's trust and client felt well-represented, resulting in a settlement."   (https://www.law.uchicago.edu/news/employment-law-clinic)

## V. SUMMARY OF ARGUMENT

The district court's July 15, 2026, Order dismissing Appellant's Complaint with prejudice as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i) was a legal error and an abuse of discretion, and it was also based on speculation and willful misrepresentation of the plaintiff's pleadings. The Order conflates the doctrine of duplicative-litigation dismissal—a doctrine of docket management—with the doctrinally distinct screening standard for frivolousness under § 1915(e)(2)(B)(i), which, per Neitzke v. Williams, 490 U.S. 319, 325 (1989), reaches only claims that are delusional or based on an indisputably meritless legal theory. Appellant's Complaint—which pleads concrete, non-delusional facts and invokes recognized federal causes of action—does not approach that standard.

The district court's "duplicative" finding rests on sheer speculation. The parties in 6156 and 8098 are not identical; 6156 pleads at least two claims not yet at issue in 8098; and the district court's assumption that Appellant could simply amend the 8098 complaint to add the EEOC-exhausted claims was unconfirmed by the 8098 court and contrary to the EEOC RTS's plain language, which directs the recipient to file a lawsuit. With the ninety-day statutory window running and no written assurance from the 8098 court that amendment would satisfy that deadline, Appellant's protective filing was a reasonable, good-faith act—not an "abuse."

The district court's characterization of Appellant's conduct as "abus[ing] the court system" is legally unsupported and defamatory. Under the controlling definition, "abuse" requires intentional harm to another. Appellant's transparency—disclosing the 8098 action on page one of the Complaint—and his good-faith request for consolidation refute any inference of intentional harm. The district court punished Appellant for his candor rather than crediting it.

Finally, the pattern of inaction—most strikingly, the 8098 court's one-year failure to rule on Appellant's IFP application—created the very conditions that forced Appellant's protective filing. Judicial resource scarcity is not a burden Appellant should be made to bear. Appellant respectfully asks this Court to vacate the July 15, 2026 Order, remand with instructions, grant IFP status in both district-court actions, appoint counsel, and direct consolidation before a single neutral judge or panel of neutral judge preferably in other court as local admin agencies and federal agencies with local offices that deal with cases against Uchicago and local courts are reluctant per history to take any actions against UChicago. See: https://1drv.ms/w/c/cb5a9ea1fc1bce73/IQB7Jo4cZB93QpF2UBXqpNBYAVREt7WlHv7wcqBy8HAUTJM?e=TDfnf3

## VI. ARGUMENT

### A. The District Court Erred in Dismissing the Complaint With Prejudice as Frivolous Under 28 U.S.C. § 1915(e)(2)(B)(i)

The district court dismissed Appellant's Complaint under 28 U.S.C. § 1915(e)(2)(B)(i), which authorizes dismissal of an IFP complaint that is "frivolous or malicious." The controlling standard for frivolousness is Neitzke v. Williams, 490 U.S. 319, 325 (1989), in which the Supreme Court held that a claim is frivolous only where "[it] lacks an arguable basis either in

law or in fact." That is, a claim is frivolous only if: (1) "the factual contentions are clearly baseless," such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an "indisputably meritless legal theory." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). It says:    "A district court must dismiss an in forma pauperis action if the action is "frivolous or malicious."    See 28 U.S.C. §  1915(e)(2)(B)(I).    An action is "frivolous" when either:  (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory.' "    Nance v. Kelly, 912  F.2d  605, 606 (2d Cir.1990) (per curiam) (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989)).    A claim is based on an "indisputably meritless legal theory" when either the claim lacks an arguable basis in law, Benitez v. Wolff, 907 F.2d 1293, 1295 (2d Cir.1990) (per curiam), or a dispositive defense clearly exists on the face of the complaint.    See Pino v. Ryan, 49 F.3d 51, 53 (2d Cir.1995)."

The controlling legal definition of "frivolous" is published by the Legal Information Institute of Cornell Law School and is available at: https://www.law.cornell.edu/wex/frivolous.

Measured against the Neitzke/Livingston standard, the Complaint in the 6156 action is not frivolous. The Complaint pleads concrete, non-delusional factual allegations: Appellant was a graduate student and employee at the University of Chicago; he was assaulted; his requests for protective measures were denied; he was denied reasonable accommodation for a documented disability; he was terminated in retaliation for protected activity; he was subjected to harassment, and hostile treatment; he was expelled; his transcripts were withheld; and he suffered documented economic and non-economic damages. Compl. ¶¶ 18–42. None of these allegations approaches the "delusion or fantasy" category. Each is grounded in concrete, datable events and identifiable actors.

Nor is the Complaint founded on an "indisputably meritless legal theory." The Complaint invokes—and pleads elements of—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title IX of the Education Amendments of 1972; Title VI of the Civil Rights Act of 1964; the Equal Pay Act, 29 U.S.C. § 206(d); the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff et seq.; and 42 U.S.C. § 1983. Each of these statutes

creates a private right of action that is routinely litigated in federal court. None is "indisputably meritless."

The district court therefore erred in treating the so-called duplicative-litigation doctrine as a species of frivolousness. Duplicative-litigation dismissal under *Serlin v. Arthur Andersen & Co., 3 F.3d 221 (7th Cir. 1993)*, is a doctrine of docket management—a prudential abstention—not a merits adjudication, and certainly not a finding that the claims lack any arguable basis in law or fact. The Supreme Court in Neitzke itself drew this line: § 1915(d) dismissal for frivolousness (now § 1915(e)(2)(B)(i)) is reserved for claims that are fanciful or fantastic; it is not a vehicle for dismissal of colorable claims that happen to be duplicative. Neitzke, 490 U.S. at 327–28.

Where, as here, the Complaint states arguable claims based on concrete facts and recognized legal theories, the district court may not dismiss with prejudice under § 1915(e)(2)(B)(i) merely because a parallel action is pending. The proper remedy—if any—is dismissal without prejudice, transfer, or stay. The district court's choice of the harshest available sanction (dismissal with prejudice) under a standard that does not fit the facts was error.

In fact, there is no doubt or shame in saying that this 6156 was a case forced by the court by not ordering on motions in the 08098 case. This so-called frivolous case, in actual (Core truth), was **imposed** on the plaintiff by the Hon'ble NDIL. Powerless plaintiff complied with the court's will; the court used its imposed case on the plaintiff to defame and shame the plaintiff publicly. I request the appeals court to protect my sanctity and innocence.

*"The University of Chicago has long enjoyed the tasty chocolates of dismissal; now their quota of dismissals shall be considered exhausted"*

Admin agencies have also shown a similar pattern where they dismiss the claims based on baseless means and then reinstatement of the case has a higher burden on the plaintiff, immunizing the University of Chicago from law.

**B. The District Court's "Duplicative" Finding Rests on Sheer Speculation, Not Record Evidence**

The district court's "duplicative" finding rests on three speculative assumptions, **none of which is supported by the record**. First, the court assumed the parties in 6156 and 8098 are identical. They are not. The 8098 action includes additional defendants not named in 6156—specifically, the Graduate Student United at the University of Chicago, Teamsters Local 743, and numerous Doe defendants—and the 8098 action's universe of individual officers, departments, and agents is broader. Serlin itself recognized that the duplicative-dismissal doctrine applies where the same claims, parties, and available relief are at issue. Serlin, 3 F.3d at 223. Where the parties are not identical, dismissal is improper.

Second, the district court assumed that the claims in 6156 are entirely subsumed by the claims in 8098. The court itself acknowledged, however, that "[t]here are two claims presented here that are not yet part of the other action.". The court addressed this by speculating that those new claims "arise out of the same facts" and could be added by amendment in 8098. Id. But the existence of new claims—however factually related—defeats the proposition that the two actions are duplicative in the Serlin sense. A claim is not duplicative merely because it arises out of the same nucleus of operative fact; if it were, the entire doctrine of supplemental jurisdiction under 28 U.S.C. § 1367 would collapse into a prohibition on filing. The court missed the fact other case had more accusations that are not in this case, as it was not fitting into the agenda of court, especially when each and every hook and crook was tried to fit the non-frivolous court imposed case into the category of frivolousness when the case was imposed onto the plaintiff by the same court, when plaintiff did all tries to make it a single dist. court case, and when the court needed **more than a year to decide on a $ 405-or-so matter of IFP(along with attorney assignment in IFP).**

Third, and most fundamentally, the district court assumed that Appellant could simply amend his complaint in the 8098 action to add the EEOC-exhausted claims. The court offered no citation to any order of the 8098-court granting leave to amend, no written representation from the 8098 court that amendment **would satisfy the EEOC's ninety-day filing requirement,** and no analysis of the EEOC RTS's plain language. The EEOC RTS, on its face, directs the recipient **to file a civil lawsuit;** it is silent as to whether the recipient may incorporate the claims by

amendment into a pre-existing action. Without written confirmation from the 8098 court that amendment would suffice, Appellant could not safely rely on amendment as a means of preserving his federal rights. The district court's assumption to the contrary was speculation, not adjudication. I have tried to solve the dispute but all these admin agencies that work from my money are not improving the conduct, at city, state, and federal level, and I am ashamed that hon'ble court hands are not clean per my research, when I never ever though to put court at trial conduct of court is putting it at trial and appeals courts haven't probably been made aware of the American Labor, and students are being a boiling frog despite of cases reaching to the court of justices (and not court of justice), eyes of the courts can't see guilt against the University of Chicago.                                    See: https://1drv.ms/w/c/cb5a9ea1fc1bce73/IQB7Jo4cZB93QpF2UBXqpNBYAVREt7WlHv7wcqBy8HAUTJM?e=TDfnf3

The legal definition of "duplication" is published by USLegal and is available at: https://legal-resources.uslegalforms.com/d/duplication. As that source explains, "duplication" refers to the process of creating a copy of a record and providing it to the requester as needed to fulfill the requester's request. Appellant did not seek to duplicate the 8098 record. He sought to preserve a distinct set of federally exhausted claims within the statutory window. The district court's reliance on the label "duplicative"—without engaging the actual legal definition—was error.

In another case, the plaintiff taught Cozen O'Connor Counsel that the plaintiff and the University of Chicago are both INCOMPETENT to give legal conclusions as that can only be given by a hon'ble judge or by a sitting judge.

I am expressly not denying the court doesn't have a conflict of interest with the University of Chicago. Court has provided easy chocolates of dismissal that taste really good to the University of Chicago over and over and over and over again. Because of that, counsel also don't take cases, as they know winning is impossible when the system and conspiracies are set up against sane plaintiffs, and I am ashamed to say that interpreters of laws are also involved in it. I have to say this as ears of court are closed and it's my duty to tell the appeals court in writing that US have a justice problem more than that US is now having justices problems. Some counsels told me why UChicago and Northwestern (Syed v. Northwestern University) move

from state to district court due to the reasons of easy dismissal and fast docket; I will not mention which counsel told me this. However, when it comes to Singla's case, fast dockets become slow and incompetent as rabbits in a race with hardworking turtles. It takes more than a year to decide on IFP, so how can the court grant justice?

I WANT THE APPEAL COURT TO ORDER THAT EACH AND EVERY JUDGE IN EACH AND EVERY CASE SHALL TAKE A WRITTEN OATH OF NEUTRALITY, INNOCENCE OF BIAS, AND ASSURITY OF JUSTICE, THAT THEY WILL GIVE JUSTICE PER LAW.

Without this, getting justice from legal methods would become impossible, especially when they will not treat victims of abuse, harassment, retaliation, discrimination, and assault with compassion and dignity, and try to impose non-just and non-legal methods of easy dismissal.

The court shall write, "I, as a Judge, assure you of justice per the law", such that it shall put a **medicine on the wounds of the grieving plaintiff.** I hope the court shall do it to give assurance of justice, and the court shall not answer this by saying this is unsupported by statute, law, code, rule, etc. I and the court both know this is definitely doable.

Further, as the courts have shown that in substance the hearing of pro se plaintiffs is practically impossible, as dismiss cases for one reason or another, the court shall loosely give counsel to pro se plaintiffs, as counsel in the USA are not appearing to improve their conduct to ask $1000 and even $1350 per hour for their non-guaranteed work. And hence civil right to counsel shall be a right such that the abusing parties, especially powerful defendants, conduct can be deterred, as, by the way, all legal interpreters are either scared to take action or are not willing to take action due to non-good-faith motives.

Court and admin agencies are, in fact, using an act or a tort that is not actually an act and tort but, in substance, it is; and it's called the Citation Reduction Act, where courts and admin agencies use dismissal to reduce citations and hence very few citations exist.

In addition, one reason is that courts appear to find novelty in cases and fundamental cases; now, plaintiffs can't build a case per novel and nuanced reasons normally to satisfy someone else's desires, then how can they get justice per USA law if the case is not novel and

fundamental per USA preceding/previous cases? I wanted to mention that the justice system shall not be a percentile system that only people from the top of the line can get justice. In this case US courts shall learn from India court that give justice to people without tasty chocolate dismissal in favor of defendants. Justice shall be granted to a person sitting at the lowest on the 1st percentile, and also to a person sitting at the 100th percentile of the spectrum of justice. Courts are not universities that need high-level people so that those people can increase the value of the institution; court work is just to interpret the law, and lawmakers have acknowledged that interpreters of law need cases to be passed up to 4-5 or maybe even more time till the Hon'ble Supreme Court. This is the thing that is not made or invented by me; people who were maybe far more intelligent and probably white in skin might have made these 4-5 passes till the final decision on the case is granted from trial or admin agencies till the Scotus.

CFPB openly claims that (https://files.consumerfinance.gov/f/documents/cfpb_cr-annual-report_2023-03.pdf), 99% closed in 2 months, focusing on dismissals and not on justice or problem solving.

> Companies overwhelmingly met the timeliness expectation in their responses to the CFPB. Companies provided a timely response to 99.6% of the 1,348,200 complaints sent to them for review in 2023.[30] Approximately 20% of complaints were closed within the initial response period of 15 days and 99% were closed within the final response period of 60 days. Timely responses are important; however, the CFPB cautions companies about closing complaints too quickly if it is to the detriment of completeness or accuracy. Companies have up to 60 days from the date they received the complaint to provide a final response to the CFPB and the consumer.

DOL in taxpayer-first act cases mostly denies all claims per their own stats even if it has probably the least burden of the contributing factor doctrine rather than motivating or other higher standard of burden of proof on the plaintiff.

If in general, in US Courts and tribunals, 99% or most of the cases are meritless, then I would have to dispute all the decisions from A to Z as this is impossible per my personal understanding. People are not wasting time when they bring the cases to courts and tribunals. They want problem-solving with legal methods which courts are choosing to deny over and over again.

**C. The District Court's "Abuse" Characterization Is Legally Unsupported and Defamatory**

The district court wrote: "His actions abuse the court system and demonstrate the frivolousness of his filing.". This characterization is legally unsupported and defamatory to Appellant.

The controlling legal definition of "abuse" is published by the Legal Information Institute of Cornell Law School and is available at: https://www.law.cornell.edu/wex/abuse. As that source defines it, "[a]buse is an action that intentionally causes harm or injures another person. This can refer to physical abuse, psychological abuse, mental abuse, or child abuse." The defining element is intentional harm. Appellant's conduct—disclosing the 8098 action on page one of the Complaint, seeking consolidation in good faith, and filing protectively because the EEOC deadline was running—does not satisfy this definition. There was no intent to harm. **There was no harm caused. There was no act of abuse.**

The district court's use of the word "abuse," in a published order entered on the public docket, has the foreseeable effect of damaging Appellant's reputation, his dignity, and his standing before future courts and tribunals. Appellant is a person of Indian national origin, of South Asian ethnicity, of Punjabi Baniya lower caste-minority heritage, and a person with a documented disability. He is a grieving party. He is a pro se litigant of limited means, residing abroad. He disclosed everything he was required to disclose, in good faith, on the first page of his Complaint. To brand that conduct as "abuse"—in writing, on the public docket—is to defame him. Appellant respectfully asks this Court to vacate that characterization and to declare that the July 15, 2026 Order, insofar as it describes Appellant's conduct as "abuse," is not supported by the controlling legal definition and should carry no precedential or preclusive weight.

This is not a matter of semantics. Words used by federal judges in published orders carry operative legal consequences. They affect the way Appellant is treated in subsequent proceedings, by future courts, by administrative agencies, and by the University of Chicago itself. A judicial characterization of "abuse" that does not fit the controlling legal definition is not merely intemperate; it is an ultra vires act of defamation by a public official, performed under color of judicial authority. Appellant does not seek damages for that act in this appeal. He seeks its vacatur. So that the sanctity and innocence of the sane plaintiff shall be protected. This is a grave miscarriage of justice.

**D. The District Court Erred in Punishing Appellant's Good-Faith Disclosure and Consolidation Request**

The district court treated Appellant's transparency as evidence against him. The court wrote: "On the first page of his Complaint, he discloses the 8098 action and explains that, at the time of his initial filing, there was a pending motion before Judge Cummings for recusal and transfer of venue to the Central District of Illinois. Rather than wait for a ruling, Singla filed this duplicative suit in another district." **The court turned Appellant's candor into a weapon.** This was intentionally done as a tactic to fit the case within the definitions and satisfy their conditions of dismissal as an opposition counsel may have done.

This is the opposite of how the federal system is supposed to work. Pro se litigants are encouraged—not punished to disclose related proceedings. The duty of candor applies to all litigants, pro se or represented. See, e.g., Fed. R. Civ. P. 11(b)(3) (representations to the court must have evidentiary support). Appellant complied with that duty. The district court should have credited his disclosure, not deployed it as a basis for the harshest available sanction that can be cited by the University in their meritless defenses that the court agrees to easily. See 23-E-10 Case in this case before CCHR, University of Chicago first claimed the claims to be meritless, and then settled with the party. This may be called "Naughty Boy Doctrine" going forward. They have done this other times also, completely lying before the Hon'ble Court in broad daylight with blatant disregard of law.

Appellant also sought consolidation in good faith. **The district court ignored that request.** The court cited Serlin for the proposition that "[i]t is irrational to allow two federal judges sitting on the same district court to devote scarce judicial resources to the adjudication of the same case for the same parties." Serlin, 3 F.3d at 224 (Also see: https://caselaw.findlaw.com/court/us-dis-crt-nd-ind-sou-ben-div/116069090.html; See Para 4) . But consolidation—not dismissal with prejudice—is the remedy Serlin itself contemplates. Where one action precedes the other, includes more defendants, and remains at the pleading stage (as the court acknowledged here), consolidation under Federal Rule of Civil Procedure 42(a) preserves all claims and all parties while conserving judicial resources. Dismissal with prejudice of the later-filed action is not the only remedy, and where (as here) it results in the loss

of two non-duplicative claims and the loss of EEOC-exhausted federal rights, it is not the proper remedy.

The court's reliance on the specter of "scarce judicial resources," Order at 3 (quoting Serlin, 3 F.3d at 224), is particularly inapposite here. Scarcity of judicial resources is not a problem of Appellant's making. Appellant did not ask for two cases. He asked for one. He disclosed the existence of the 8098 action, he moved to transfer venue, he moved to recuse, and he sought consolidation. The district court's decision to punish Appellant for the consequences of the 8098 court's year-long failure to rule on his IFP application—and for Appellant's protective filing in the face of that failure—inverts the doctrine of judicial economy.

**E. The EEOC Right-to-Sue Deadline Justified Appellant's Protective Filing**

The EEOC issued the Notice of Right to Sue on March 16, 2026. Under 42 U.S.C. § 2000e-5(f)(1), Appellant had ninety (90) days from receipt in which to file a civil action. The deadline ran on or about June 14, 2026. The EEOC RTS, on its face, directs the recipient to file a lawsuit; it is silent as to whether the recipient may satisfy the deadline by amending a pre-existing civil action. The case law on this question is unsettled; the plaintiff is making this statement having no access to legal research platforms. Compare, e.g., cases holding that amendment relates back to the original filing under Federal Rule of Civil Procedure 15(c), with cases holding that an amendment adding newly exhausted claims does not relate back for EEOC limitations purposes.

Given that unsettled landscape to plaintiff knowledge and/or research, Appellant could not safely rely on the amendment alone, as the court and defendant can say tomorrow that the lawsuit was filed not in time and hence it shall be dismissed when in actuality it was filed timely. He moved for leave to amend in the 8098 action (ECF Nos. 93, 97) on or about March 2026. The 8098 court did not clarify, in writing or otherwise, whether amendment would satisfy the EEOC deadline. Two months passed. The ninety-day window was running out. Appellant filed the CDIL action on May 21, 2026—twenty-four days before the deadline—expressly to preserve his federal rights, as the court might have taken more than a month to file and initiate an action like what happened with 08098, till date even after exhaustion of 90 days, the court still chose not to clarify the EEOC RTS matter. He disclosed the 8098 action on the first page of the Complaint.

He explained his reasons. He sought consolidation. **He asked the court to stay the new proceedings pending resolution of the transfer motion in 8098. Ignored by Court.**

This is not abuse. This is the conduct of a careful, cautious, transparent litigant faced with a hard statutory deadline and an unresponsive prior forum. The district court's failure to engage with this reality—and its decision to characterize Appellant's protective filing as "abus[e] of the court system"—was clearly erroneous and defamatory. The court's post-hoc assumption that amendment was available as a matter of course is not supported by any written order of the 8098 court, and it is contrary to the EEOC RTS's plain language. The court would have solved it easily by citing/saying that the EEOC RTS is considered, and the case was filed timely; they chose not to do so.

## F. The 8098 Court's One-Year Failure to Rule on IFP Violates Appellant's Right of Access to the Courts

The 8098 Court has not, as of the date of this filing, finally ruled on Appellant's IFP application or on his motion for appointment of counsel, despite the application having been pending for more than one year now. This delay effectively denied Appellant access to the courts. It created the very conditions that forced the protective filing in the CDIL action. It is the proximate cause of the duplicative filing that the district court here used as the basis for dismissing Appellant's Complaint with prejudice.

"It makes an unfortunate impression that the case is not in good hands, and local courts and admin agencies are creatures of the University of Chicago"

The right of access to the courts is a fundamental right. Related if not similar case is herein Bounds v. Smith, 430 U.S. 817, 828 (1977). Section 1915 itself was enacted "to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989). A one-year failure to rule on an IFP application is inconsistent with that statutory command. Appellant respectfully asks this Court to exercise its supervisory authority to direct the 8098 court to rule on the pending IFP application and motion for appointment of counsel forthwith.

Judicial resource scarcity is not a burden Appellant should be made to bear. The Seventh Circuit has repeatedly emphasized that pro se litigants are entitled to liberal construction of their

filings and to meaningful access to the courts. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); The 8098 court's inaction—combined with the 6156 court's decision to punish Appellant for the consequences of that inaction—has effectively closed the courthouse door to Appellant on his EEOC-exhausted federal claims. This Court should reopen it.

## G. The Pattern of Disposition in Cases Involving the University of Chicago Warrants Reassignment to a NEUTRAL PANEL on Remand

Appellant respectfully submits that the cumulative pattern of disposition by federal district courts and administrative agencies in matters involving the University of Chicago—including the 8098 court's one-year failure to rule on IFP, the 6156 court's dismissal with prejudice on speculative grounds, the IHRC's failure to take meaningful action on Appellant's complaints, and the NLRB's approximately twenty-six-year pattern of declining to take significant action against the University despite approximately 350 complaints—warrants reassignment to a neutral panel on remand.

Appellant is aware that this is most likely an extraordinary request. He does not attribute the pattern to any single decision-maker. He does not allege that any individual judge or agency adjudicator is corrupt or biased in the legal sense as of now(no rights waived). He submits only that the cumulative pattern—documented in approximately 2,500 pages of Appellant's research—bears on the question of whether Appellant has been afforded a fair forum in which to be heard, and that reassignment to a neutral panel is the prudent course. The cumulative pattern here, while not establishing bias on the part of any single adjudicator, supports a reasonable basis to suspect that the existing forum is not the neutral forum to which Appellant is entitled. See: 28 U.S. Code § 455 - Disqualification of justice, judge, or magistrate judge. Also See: Rule 2.11: Disqualification

Appellant additionally submits that the practice of dismissing complaints against the University of Chicago without leave to amend—as occurred here—operates as a "citation-reduction technique": by dismissing at the pleading stage, courts avoid generating citations that would otherwise attach to the University's name in subsequent legal research. It's a pattern and practice of courts and tribunals, as their eyes can't see violations or crimes of UChicago, it appears making them immunized from law in actual. He submits only that the practice has that

effect, and that the effect is inconsistent with the principle that all litigants—including large federally funded institutions—should be subject to the same standards of pleading-stage review.

Amendments rights for the case are fully reserved, and any changes upon knowledge of defect shall be solved by me, and I shall be given opportunity to do so, especially if the life so remains.

## VII. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Appellant Dipesh Singla respectfully prays that this Honorable Court enters an Order:

1. Vacating the Order of the United States District Court for the Northern District of Illinois, Eastern Division, entered July 15, 2026 by the Honorable Sunil R. Harjani in Case No. 1:26-cv-06156 (ECF No. 14), and declaring that Order—insofar as it characterizes Appellant's conduct as "abuse" or "frivolous"—to be unsupported by the controlling legal definitions and not supported by the record;

2. Remanding the 6156 action to the district court with instructions to deny the motion to dismiss when they will file it after appearing in courts, to permit the action to proceed on the merits, and to consolidate the 6156 actions with the 8098 action before a single neutral judge;

3. Granting Appellant leave to proceed in forma pauperis in both the 8098 and 6156 actions and on appeal, with all filing fees waived; Directing the district court to provide Appellant with no-cost access to LexisNexis, Westlaw, and equivalent electronic legal research platforms, to the extent permissible by law and within the Court's authority, so that Appellant may competently prosecute his claims as a pro se litigant pending appointment of counsel; They have provided it to University affiliates but not me, https://www.courtlistener.com/docket/71915613/in-re-multi-district-pacer-exemption-for-graduate-student-mr-sixun-tang/, See Research: https://1drv.ms/w/c/cb5a9ea1fc1bce73/IQB7Jo4cZB93QpF2UBXqpNBYAVREt7WlHv7wcqBy8HAUTJM?e=TDfnf3

4. Granting all reliefs like Pacer multi-district access, LexisNexis, VLex, and Westlaw access to plaintiff-appellant Dipesh Singla if the appellate court has jurisdiction to do so.

5. Appointing pro bono counsel for Appellant in both the 8098 and 6156 actions (**so that consolidation can happen**) and on appeal, at no cost to Appellant, given the extraordinary complexity of the case and Appellant's indigence, disability, and residence outside the United States;

6. Consolidating the 8098 and 6156 actions before a single neutral district judge panel of 5 Judges, and—given the case's complexity, the number of jobs at issue **(approximately fifteen), and the number of defendants (the University of Chicago, its officers, departments, agents, and two unions)**—assigning a panel of neutral trial district judges to oversee the matter;

7. Declaring that the EEOC Notice of Right to Sue dated March 16, 2026 was timely and properly exhausted, and that Appellant's civil actions—both the amendment motion in 8098 and the protective filing in 6156—satisfy the ninety-day filing requirement of 42 U.S.C. § 2000e-5(f)(1);

8. Dissuading the district court from dismissing the case on non-merit grounds and directing that the case proceed to a full Jury trial on the merits, with full discovery, on all claims and against all defendants;

9. Dissuading sitting judges from retaliating against me;

10. Awarding Appellant such make-whole remedies as the evidence at trial may warrant, including reinstatement, back pay, front pay, compensatory damages, punitive damages, declaratory and injunctive relief, and reasonable attorneys' fees and costs; and

11. Granting such other and further relief as this Honorable Court deems just and proper.


Respectfully submitted,


_____

**Dipesh Singla**
Plaintiff-Appellant, Pro Se
Email: dipeshsingla668@gmail.com
Date: 18/7/2026

**VERIFICATION**

I, Dipesh Singla, being duly sworn, depose and say: I am the Appellant in the above-captioned matter. I have read the foregoing Motion for Leave to Proceed in Forma Pauperis on

Appeal, for Appointment of Counsel, for Waiver of PACER Fees, and **Opening Brief of Appellant** Dipesh Singla, and I know the contents thereof. The statements contained therein are true and correct to the best of my knowledge, information, and belief, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____

**Dipesh Singla**
Appellant, Pro Se
Dated: 18/7/2026

**CERTIFICATE OF SERVICE**

I, Dipesh Singla, hereby certify that on the date stated below, I caused a true and correct copy of the foregoing Motion for Leave to Proceed in Forma Pauperis on Appeal, for Appointment of Counsel, for Waiver of PACER Fees, and Opening Brief of Appellant Dipesh Singla to be served upon parties via the United States District Court for the Northern District of Illinois, Dropbox for pro se filers. I further certify that, in light of my pro se status, indigence, residence outside the United States, and the pendency of my IFP application, I respectfully request that the Clerk of this Court accept this filing electronically and serve copies upon all counsel of record. Also shared documents on this email usca7_clerk@ca7.uscourts.gov.

_____

**Dipesh Singla**
Appellant, Pro Se
Dated: 18/7/2026